Argued and submitted April 9, affirmed September 26, 2001

In the Matter of the Marriage of

Wanda Lee SMITH,
*Appellant,*

*and*

Robert Henry SMITH,
*Respondent.*

15-91-09112; A104431

32 P3d 925

George W. Kelly argued the cause and filed the briefs for appellant.

Jeffrey E. Potter argued the cause for respondent. With him on the brief was Gardner, Honsowetz, Potter, Budge & Ford.

Before Landau, Presiding Judge, and Linder and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Wife alleged that husband owed her unpaid spousal support, and she moved for a judgment to that effect. The trial court denied her motion. She appeals. We affirm.[1]

Husband and wife's 44-year marriage was dissolved in 1991. The marital settlement agreement, incorporated into the dissolution judgment, requires each spouse to pay spousal support to the other in the amount of 50 percent for a certain time, and thereafter 40 percent, of "any earned income," defined as:

> "[A]ll compensation for a party's efforts, including, but not limited to, salary, wages, bonuses, fees, tips and dividends pai[d] in lieu of salary or wages from a closely held corporation."

At the time of the dissolution, husband had recently retired from his position at Western Electronics Corporation (WEC), but at times thereafter he continued to hold a title there and performed a significant amount of work for the corporation on an irregular schedule, although he did not receive any formal, regular salary. The present case arose in 1997 when wife sought a judgment in the amount of husband's alleged unpaid spousal support.

The gist of wife's argument at trial and again on appeal is that, since the dissolution, husband has received three forms of earned income, as that term is defined in the dissolution judgment: unjustifiably large shareholder dividends issued by WEC; interest income from loans to WEC at artificially inflated rates; and excessive profits from a subleasing arrangement whereby he leased equipment from a supplier and subleased it to WEC. Husband admits spending significant time at WEC after the dissolution, but counters that the money he received from the corporation was not earned income, as that term is defined in the judgment;

---

[1] The proceeding before the trial court, after wife voluntarily dismissed a motion to modify the original dissolution judgment, was to set arrearages due under that judgment. The parties assert that our standard of review is *de novo*. We assume without deciding that our review is *de novo,* because regardless of whether we review the facts *de novo* or review the trial court's findings to assure that they are supported by the evidence in the record, we reach the same conclusion.

rather, it was income he would have received in any event even if he had never spent any time at WEC after the dissolution.

After expressing considerable initial skepticism, the trial court found that husband's evidence was more persuasive and that wife had not satisfied her burden of proof. *See Waterman and Waterman,* 158 Or App 267, 271, 974 P2d 256 (1999) ("[W]hen there is evidence in the record of the husband's actual income, it is incumbent upon the wife as the proponent of a higher income figure to demonstrate husband's present ability to pay spousal support based on the higher amount."). Specifically, the trial court said, with respect to the dividends: "I am not able to find that these dividends were paid in lieu of salary or wages." Regarding the other forms of alleged "earned income," the court further found that the income from interest on the loans resulted from husband's willingness to risk an investment in WEC despite its precarious financial position and that the income from the sublease arrangement resulted from husband's willingness to use his reputation with the equipment supplier to consummate the arrangement when WEC on its own could not have done so. In essence, the trial court believed that husband's income streams from WEC were not salary, salary-like, or "in lieu of salary," despite wife's assertions that they were.

■ On appeal, we must determine whether husband received "earned income" under the provisions of the marital settlement agreement, which in turn requires us to interpret those provisions. When a marital settlement is incorporated into a dissolution judgment, its terms are interpreted in the same manner as other contractual terms, *Moon v. Moon,* 140 Or App 402, 407, 914 P2d 1133, *rev den* 323 Or 484 (1996), that is, by examining the text within the context of the whole document to determine the parties' intentions; extrinsic evidence of the parties' intentions if text and context are ambiguous; and, as a last resort, maxims of construction. *Yogman v. Parrott,* 325 Or 358, 360-65, 937 P2d 1019 (1997).

■ We begin with the text. "Earned income" is defined as "all compensation for a party's efforts, including, but not limited to, salary, wages, bonuses, fees, tips and dividends pai[d]

in lieu of salary or wages from a closely held corporation." The key phrase in this definition is "compensation for * * * efforts." "[W]ords of common usage typically should be given their plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). "Compensation" is "payment for value received or service rendered," *Webster's Third New Int'l Dictionary*, 463 (unabridged ed 1993), or "that which is given in recompense, an equivalent rendered, remuneration * * *," 1 *The Oxford English Dictionary*, 490 (compact unabridged ed 1971). We note a feature that is common to both these definitions. Compensation is part of a *quid pro quo*: payment in exchange for value, given in *recompense, equivalent* to something else. "Compensation for effort" must therefore mean payment received from some person or entity, the amount of which depends on the quantity or quality of services provided by the person receiving the payment.

■ Further, and to the same effect, because earned income includes "dividends pai[d] in lieu of salary or wages," we can presume that, by negative implication, earned income does *not* include ordinary dividend income, or what we might call "pure" dividend income—the kind of return on investment that results from luck, the efforts of others, seemingly random market forces, the wise calculation of risk against potential earnings, or some combination of those factors. The remaining list of examples of earned income confirms this understanding. "[S]alary, wages, bonuses, fees, tips and dividends pai[d] in lieu of salary or wages" are specific examples of "compensation for a party's efforts." All of them are forms of payment received as *quid pro quo* for services provided. Although the list is not exclusive, under the maxim of *ejusdem generis*, the enumerated examples demonstrate that the general term "earned income" refers to a payment for services rendered because of a party's efforts, in an amount correlated to its quality or quantity. *See Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Or 303, 312-13, 985 P2d 1284 (1999) (applying *ejusdem generis* at the "text and context" level of contract interpretation).

Any ambiguity regarding the meaning of "earned income" is resolved by extrinsic evidence in the record. Husband rejected a draft agreement in which "earned income"

was defined as "all compensation for a party's efforts, including, but not limited to * * * dividends"; his attorney indicated that husband wanted language that would permit husband to keep all dividends generated by the company unless "he went back to work and instead of paying him a salary they paid him dividends he otherwise wouldn't have been entitled to."

■　Thus, "earned income" or "compensation for efforts" includes only income that is payment received from some person or entity, the amount of which is more or less correlated to the value of services provided by the person receiving the compensation. This conclusion, in turn, means that traditional investment income is not "earned." Although such income may result from efforts, it is not correlated to the quantity or quality of those efforts; depending on luck, market forces or other variables outside the control of the investor, the exact same "effort" might produce high levels of income, low levels, or losses.

Applying this interpretation to the various income streams wife seeks to call "earned income," we conclude that none of them is "earned income" as defined in the dissolution judgment.

■　We begin with the interest and sublease income. A person who earns a profit from loaning money after calculating the appropriate interest rate in light of the risk is receiving a payment in the same sense that any other investor is. So too is a person who leases equipment after calculating the likelihood of realizing a return on investment through a sublease. But, as we have explained, earned income is a payment for services rendered because of a party's effort, correlated to its quantity or quality, and it does *not* include income derived from investments, where the amount of compensation depends primarily on market forces beyond the influence of the investor. Husband's interest and sublease income streams are examples of the *un*included forms of compensation—income derived from speculative investments. When husband lent money to WEC, knowing of the corporation's precarious financial position, he became an investor whose return had no correlation to the quantity or quality of his efforts, whatever those might have been. When he leased

equipment with the expectation that he could sublease it at a profit, he made a speculative investment for which the return, again, could vary due to forces beyond his control. Thus, the interest income and the sublease income are not "earned income" under the definition.

■     We turn now to the dividend income. The parties present conflicting explanations for the large payouts in 1993 and 1994. Wife suggests that they were disguised forms of salary: "The evidence is entirely consistent with the notion that there was an unspoken and informal arrangement whereby husband would share in corporate monies as compensation for the 'free' help he was providing." In large part, wife's evidence is circumstantial. She asserts that WEC was a floundering corporation that would not ordinarily distribute large dividends and that the fact that WEC did so, in temporal conjunction with husband's threat that he would find legal ways to avoid paying spousal support, compel the conclusion that the dividends were a subterfuge. Husband, on the other hand, argues that the large dividends resulted from the normal course of business: Wasden, who owned approximately 75 percent of WEC's stock, had incurred substantial liability as the result of a lawsuit related to his corporate activities. WEC chose to reimburse Wasden by paying him a dividend. WEC's accountant decided that, if Wasden received a cash distribution, husband, the only other shareholder at that time, had to receive one as well in order for WEC to retain its Subchapter S tax classification.

The trial court found husband's account marginally more credible, concluding that the dividend income was not "earned" because it was not compensation that husband received in exchange for his work at WEC. Rather, the court found a factual disconnection between husband's efforts at WEC, on the one hand, and the compensation on the other. We agree. Wife has not provided convincing evidence to negate husband's assertion that his dividend income would have been the same had he never performed any post-"retirement" work at WEC—that is, evidence that the dividends derived from anything other than an accountant-driven corporate decision that would have been made regardless of whether husband had put in post-"retirement" time at WEC

or not. The fact that husband's intention in working sporadically at WEC was to "protect his investment" is ultimately irrelevant. Husband made efforts; he received payments; but wife produced insufficient concrete evidence of a cause-and-effect relationship between his efforts and the payments. She did not successfully discredit his assertion and the testimony of his witnesses that the payments bore no relation to his efforts and therefore were not "compensation," hence not "earned income." Wife therefore is not entitled to any share of the contested dividends.

Affirmed.