Argued and submitted December 13, 2001, affirmed March 13, 2002

In the Matter of the Marriage of

Bernadine Angela MENARD,
*Respondent,*

*and*

Raymond Thomas MENARD,
aka Raymond Thomas Menard, III,
*Appellant,*

*and*

Amber Rae MENARD,
*Third-Party Respondent.*

C89-1024DR; A113218

42 P3d 359

Laura Graser argued the cause and filed the brief for appellant.

Robert T. Scherzer argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Husband appeals from a trial court judgment that awarded wife a share of his "voluntary separation incentive" (VSI) benefits from the military. The court found that VSI payments were the "functional equivalent" of retirement benefits and therefore marital property under the terms of the dissolution judgment. Husband argues that wife's claim is barred by laches and equitable estoppel and, if not, then it fails on the merits because VSI benefits are not retirement benefits. Those arguments did not persuade the trial court, and they do not persuade us either. We therefore affirm.

The parties' 12-year marriage was dissolved in 1989. Husband was in the military during the entire marriage. The dissolution judgment awarded wife custody of the parties' two children and imposed a child support obligation on husband. It also incorporated a marital settlement agreement that provided for wife to receive 25 percent of husband's "military retired pay," or of his "disposable compensation" from the military if he chose to "voluntarily separate from the military prior to retirement." At the time of the dissolution, the parties anticipated that husband would remain in the military for seven more years, at which time he could retire with 20 years' service and full benefits. However, shortly after the dissolution, Congress, reacting to a surplus of senior military personnel, created the "voluntary separation incentive" program to encourage early separation from active duty. 10 USC § 1175. That program allowed members to separate from active duty, transfer to the Ready Reserves, and receive a stipend in an amount determined by current level of pay and years of service, distributed in annual installments until depleted. In December 1992, three years after the dissolution and four years before his anticipated retirement, husband took the incentive, transferred to Ready Reserve, and received a VSI benefit of $523,930.16, payable in annual installments of $16,162.37 until the sum is depleted in the year 2025. Wife learned of this state of affairs almost immediately from the children and wrote to military authorities seeking details.

Husband's business ventures after separation from active duty did not prosper, and, in July 1993, he moved for a modification of his child support obligation. Wife, in turn, moved to show cause "why the judgment should not be modified to award [her] 25% of [husband's] Voluntary Separation Incentive." At the hearing on these motions, the court expressed some confusion regarding the nature of the VSI payment: "I cannot determine how much of it is retirement and how much of it is not." Wife withdrew her motion for direct VSI payments as part of the property division, and the court set child support amounts based on husband's income, including the monthly VSI payments.

Between that hearing and 1999, wife and husband were in court on several occasions over husband's alleged failures to pay child support. In none of those proceedings did wife assert a claim to any portion of husband's VSI payments except insofar as they contributed to the monthly income that served as the basis for determining his support obligation. In April 2000, however, in an amended motion to modify child support, wife demanded that husband show cause why "all past VSI payments and/or retirement payments received by [husband] should not be accounted for and 25% of such reduced to judgment in favor of [her]." The trial court found that VSI payments are the "functional equivalent of retirement" and that therefore, under the terms of the dissolution judgment, wife was entitled to 25 percent of them, both retroactively and in the future. Specifically, the court ordered that wife receive 25 percent of husband's net VSI payments after federal and state taxes, social security and other mandatory deductions are subtracted, retroactive to December 1992 ($30,350.43), with credit for the part of child support payments based on husband's VSI income ($6,061). This brought the amount due to $24,289.43.[1] On appeal, husband argues that both laches and equitable estoppel bar wife's claim for a share of his VSI, and that, even if the claim is not barred, it fails on the merits because VSI payments are not "retirement benefits."

---

[1] Husband was also ordered to pay $1,528.69 per month in child support. He does not appeal from that aspect of the judgment.

## I. LACHES

■ Laches is an equitable defense; we therefore review the trial court's decision *de novo*. ORS 19.415(3). To prevail, husband must establish that (1) wife delayed asserting her claim for an unreasonable length of time, (2) with full knowledge of all relevant facts (and laches does not start to run until such knowledge exists), (3) resulting in such substantial prejudice to husband that it would be inequitable for this court to grant relief to wife. *See Stephan v. Equitable S & L Assn.*, 268 Or 544, 569, 522 P2d 478 (1974).

■■ Although what a "reasonable time" is for purposes of laches depends on the circumstances of each case as opposed to some mechanical formula, *McIver v. Norman*, 187 Or 516, 544, 213 P 2d 144 (1949), Oregon courts take guidance from analogous statutes of limitations. *Hilterbrand v. Carter*, 175 Or App 335, 343, 27 P3d 1086 (2001); *Fontana v. Steenson*, 145 Or App 229, 232, 929 P2d 336 (1996). Delay beyond the analogous statute of limitations creates a rebuttable presumption of unreasonableness. *Id.*

■ In this case, husband asserts that the analogous statute of limitations is the six-year time limit for breach of contract claims, ORS 12.080, and that wife delayed beyond that time: She discovered husband's VSI in late December 1992 and did not serve husband with notice that she was claiming a share of it until April 2000. Wife argues that an earlier letter from her to military authorities actually commenced her action at a much earlier time and that, in any event, the applicable analogous time limit is the 10-year period for bringing an action on an obligation pursuant to a judgment. ORS 12.070.

Wife's latter position is correct. The 1989 marital settlement agreement was incorporated into the amended judgment of dissolution. Thus, although the terms of the marital settlement agreement are construed as though they were contract terms, *Smith and Smith*, 176 Or App 619, 622, 32 P3d 925 (2001), nonetheless "when a claim arising from a contract is held to have merged into a judgment, a party cannot maintain an action on the contract for those claims, but may enforce the judgment only[.]" *Barrett and Barrett*, 320

Or 372, 378, 886 P2d 1 (1994). The court stated recently: "[N]o Oregon statute or opinion of this court of which we are aware allows a party to bring an action for breach of contract for violation of a judgment." *Webber v. Olsen*, 330 Or 189, 196, 998 P2d 666 (2000).

Thus, wife's action in this case is most analogous to an action on a judgment; the time period we use as a gauge for determining the reasonableness of her delay is 10 years. The undisputed facts establish that husband did not opt for the VSI until December 1992. Wife, obviously, brought her action prior to the expiration of 10 years from that date. Although we are not bound to find her delay reasonable merely because it was shorter than the analogous statute of limitations period, that fact does confirm that husband has the burden of proving unreasonableness. His arguments at trial and on appeal all presume that the six-year period is applicable, and wife's eight-year delay is therefore unreasonable. He makes no attempt to meet his burden of proving that it is unreasonable by comparison to a 10-year limit. His laches argument therefore fails.

## II. ESTOPPEL

■ Like laches, estoppel is an equitable doctrine, so we review *de novo*. ORS 19.415(3). As we pointed out recently:

> "Estoppel is not a legal grab-bag of loosely connected principles. It has distinct branches that are composed of different elements and serve different purposes. We discourage litigants from assuming otherwise." *State v. Bush*, 174 Or App 280, 291 n 8, 25 P3d 368 (2001) (citation omitted).

Husband's assignment of error specifies "equitable estoppel," but he also parenthetically refers to "estoppel by acceptance of benefits," a somewhat different claim. Neither claim, however, can succeed.

■ The doctrine of equitable estoppel is employed to prevent a party from alleging a crucial fact to be other than what by act or omission that party previously led another party justifiably to believe. *Wiggins v. Barrett & Associates, Inc.*, 295 Or 679, 689, 669 P2d 1132 (1983). In order to establish

equitable estoppel, a party must offer evidence from which the trier of fact could find:

"(1) A false representation (albeit an innocent one) was made (2) by someone having knowledge of the facts to (3) one who was ignorant of the truth, (4) that the statement was made with the intention that it be acted upon by the [ignorant party] and (5) that [the ignorant party] acted upon it." *Paulson v. Western Life Insurance Co.*, 292 Or 38, 52, 636 P2d 935 (1981) (citation omitted).

Husband concedes that wife never made a representation that was "literally 'false.' " That being the case, classic "equitable estoppel" does not bar her claim.

■ However, husband argues that her delay in making her claim, combined with her years of accepting child support, prevents her from asserting any property right in the VSI under a theory of "estoppel of acceptance by benefits." He relies on *Hess v. Seeger*, 55 Or App 746, 762-63, 641 P2d 23, *rev den* 293 Or 103 (1982), where this court said:

"Estoppel may also apply where an individual accepts the benefits of a particular transaction or state of affairs. To establish an estoppel by acceptance of benefits,

" '* * * it is essential that the party against whom the estoppel is invoked should have acted with knowledge of his rights, and that the party claiming estoppel was without knowledge or means of knowledge of the facts on which he bases his claim of estoppel, that he was influenced by and relied on the conduct of the person sought to be estopped, and that he changed his position in reliance thereon to his injury.' 5 *Thompson on Real Property* (1979 Replacement) § 2525, 552." *Hess*, 55 Or App at 762.

Husband's defense fails for two reasons. First, although wife did receive child support payments from husband on the theory that the VSI was income, the support was not a benefit to her in the legal sense of the term. As this court has pointed out, child support is for the benefit of the dependent child, not the parent. *Christiansen and Christiansen*, 161 Or App 528, 535, 984 P2d 371 (1999). More fundamentally, however, nothing in the record indicates the presence of the key

dynamic of an estoppel by acceptance claim—here, a difference between what wife knew about her rights and what husband knew. Indeed, whether wife has rights to husband's VSI is the issue at the core of this case and not a fact that one party could know while another did not. We turn, therefore, to that issue.

## III.  WIFE'S CLAIM TO A SHARE OF HUSBAND'S VSI

■  The terms of the dissolution judgment, in context, clearly state that wife is entitled to 25 percent of husband's VSI. In part, that judgment provides:

> "The Husband's future military retired pay constitutes marital property to the extent that [it] is based upon military service while the parties were married. The Wife's right to receive her portion of this property interest accrues upon the Husband's retirement, such retirement being solely within the Husband's discretion. At that time, the Wife shall receive an amount of the Husband's disposable retired pay equal to 25 percent of the net retired pay after federal and state taxes, social security and other mandatory deductions. In the event Husband chooses to voluntarily separate from the military prior to retirement, Wife shall be entitled to her portion of Husband's disposable compensation directly from Husband. Husband shall have until six months from the date of payment to provide Wife her portion of the proceeds. Should Husband choose not to provide Wife's portion, Wife shall be entitled to receive and may at her option begin receiving all or a portion thereof by direct payment from the Military Finance Center, payable from Husband's disposable compensation.

> "\* \* \* \* \*

> "For purposes of this agreement, the term net retired pay means the full monthly retirement benefits the Husband is or would be entitled to receive upon retiring \* \* \*. It also includes all amounts of retired pay the Husband in any manner actually or constructively waives or forfeits for any reason or purpose."

By this judgment, wife is entitled to a share of "retirement pay," defined as "monthly retirement benefits." Husband correctly points out that there are differences between VSI and traditional military retirement pay. The plans come from

separate funds. VSI is nontransferable and runs for a fixed number of years, while traditional military retirement benefits are an annuity. But the similarities far outnumber the differences. We find the following reasoning from the Florida Supreme Court, and the courts whose cases it cites, persuasive:

> "[Under the] Voluntary Separation Incentive (VSI) and Special Separation Benefit (SSB) programs * * *, qualifying service members who voluntarily leave active duty before their retirement vests receive benefits based on the individual's salary at the time of separation and years of service. 10 USC §§ 1174a(b), 1175(e)(1). * * * Not only are VSI/SSB benefits based on years of service and rate of pay as is retired pay, if a service member who has received a VSI/SSB payment thereafter reenlists in the active force and qualifies for retirement, the incentive payment must be recouped from the retirement benefit to which that individual becomes entitled. 10 USC §§ 1174a(g), 1174(h), 1175(e)(3). We agree with [the wife] as a practical matter, VSI payments are the functional equivalent of the retired pay in which she has an interest under the settlement agreement. *Accord In re Crawford*, 180 Ariz 324, 884 P2d 210 (Ct App 1994) (whether SSB payment represent retirement proceeds or a payment in lieu of retirement benefits, some portion of it is attributable to retirement funds); *Blair v. Blair*, 271 Mont 196, 894 P2d 958, 962 (1995) (election of special separation benefits is an election of early retirement); *Kulscar v. Kulscar*, 896 P2d 1206 (Okla Ct App 1995) (SSB payment is either retirement proceeds or payment in lieu of retirement benefits). * * * If we were to hold otherwise a service-member spouse would be able to defeat the other spouse's court-awarded interest in military retirement benefits by unilaterally altering the form of those benefits in a manner that was unforeseeable at the time the award was made. *Accord In re Crawford*, 884 P2d at 213; *Kulscar*, 896 P2d at 1208." *Kelson v. Kelson*, 675 So2d 1370, 1372 (Fla 1996).

Even if the term "retired pay" were ambiguous, the context within which it appears in this case demonstrates that wife's claim has merit. The parties understood that the date of husband's retirement was "solely within Husband's discretion." To account for the possibility of early retirement,

they provided that, "[i]n the event Husband chooses to voluntarily separate from the military prior to retirement, Wife shall be entitled to her portion of Husband's disposable compensation directly from Husband," and "retired pay" was expressly defined so as to include "all amounts of retired pay the Husband in any manner actually or constructively forfeits for any reason or purpose." Thus, even if VSI payments are not "retired pay" *per se*, they are payments in lieu of retired pay that husband in effect forfeited or waived by virtue of his early retirement.

■ Because the dissolution judgment clearly entitles wife to a 25 percent portion of husband's VSI, husband can prevail only by establishing that the court lacked authority to make that award. To do so, he argues that the court's authority to make the award is preempted by federal law, in particular by the Uniform Services Former Spouses Protection Act, 10 USC § 1408 (USFSPA), as construed in *Mansell v. Mansell*, 490 US 581, 109 S Ct 2023, 105 L Ed 2d 675 (1989).

To understand the effect of *Mansell* and USFSPA on this case, we must begin with an earlier Supreme Court case. In *McCarty v. McCarty*, 453 US 210, 101 S Ct 2728, 69 L Ed 2d 589 (1981), the Supreme Court held that then-existing federal law preempted state community property law to the extent that state law purported to award a service member's retirement pay to his or her spouse. Congress responded the next year by enacting USFSPA, which specifies that state courts may distribute "disposable retired or retainer pay" in dissolution proceedings under state law. 10 USC § 1408(C)(1). Husband argues that, because USFSPA used the term "disposable retired or retainer pay," the exemption from federal preemption does not cover VSI. In support, he cites *Mansell*, where the Court held that the exemption did not apply to a military member's disability pay. Husband particularly notes Justice O'Connor's dissenting opinion, where she argues that the majority opinion permits a service member to shield his or her retirement benefits from a former spouse by cleverly transforming it into disability pay. *Id.* at 601. Husband's point, apparently, is that if *Mansell* allows an unscrupulous serviceperson to shield retirement benefits from an ex-spouse by transmuting it into disability pay, it must also

allow an analogous manipulation of VSI payments. USFSPA, husband argues, "is narrow in its terms and should be so construed."

The Supreme Court itself, however, took a different view. Perhaps in response to Justice O'Connor's dissent, the Court cautioned:

> "Because domestic relations are preeminently matters of state law, we have consistently recognized that Congress, when it passes general legislation, rarely intends to displace state authority in this area. Thus we have held that we will not find preemption absent evidence that it is 'positively required by direct enactment.' " *Id.* at 587 (citations omitted).

We take the Court at its word. No direct enactment, including USFSPA, positively requires that state law give way to federal law so as to protect a serviceperson's VSI payments from division in a dissolution proceeding. In reaching this conclusion, we join the overwhelming majority of other states. *See In re Marriage of Heupel*, 936 P2d 561, 567 (Colo 1997) (citing cases).

Affirmed.