On petitioner - cross-respondent's motion for review of Fair Dismissal Appeals Board's denial of motion to stay filed September 11, and on respondent - cross-petitioner's response to motion for review of Fair Dismissal Appeals Board's denial of motion to stay filed September 25, 2002, order denying stay affirmed January 8, 2003

## Karin BERGERSON,
*Respondent - Cross-Petitioner,*

*v.*

## SALEM-KEIZER SCHOOL DISTRICT,
*Petitioner - Cross-Respondent.*

## FDA-02-2; A118518

60 P3d 1126

Andrea L. Hungerford and The Hungerford Law Firm, LLP, for motion.

Thomas K. Doyle and Bennett, Hartman, Morris & Kaplan, LLP, *contra*.

Before Brewer, Presiding Judge, and Wollheim and Kistler, Judges.

BREWER, P. J.

**BREWER, P. J.**

Salem-Keizer School District (the district) has petitioned for judicial review of an order of the Fair Dismissal Appeals Board (FDAB) that requires the district to reinstate respondent, a teacher who was terminated by the district for "neglect of duty" and "immorality." Pursuant to ORS 183.482(3)(a), the district moved to stay enforcement of that order pending judicial review. FDAB denied the motion to stay, and the district has asked this court to review that ruling. We granted a temporary stay pending consideration of the parties' contentions. The ultimate questions presented are whether the district has shown a colorable claim of error in FDAB's underlying order and whether the district would suffer irreparable injury if a stay is not granted.

FDAB found the following facts. Respondent is an elementary school teacher who worked for the district for approximately 19 years. Until her dismissal, she never was the subject of any disciplinary action. In January 2001, respondent went to the residence of her estranged husband's girlfriend, where respondent's husband was living. After an emotional confrontation with her husband, respondent got in her van and ingested Prozac and pain medication in an attempt to commit suicide. She then drove the van into her husband's pickup truck, which was parked in the driveway, pushing the pickup into the door of the attached garage.

Two area newspapers reported the incident. Respondent spent one night in the hospital and then voluntarily committed herself to a psychiatric unit. The district hired a substitute teacher and placed respondent on administrative leave with pay. She did not return to teaching after being released from the hospital.

The district attorney filed a four-count criminal complaint against respondent. Respondent pleaded no contest to one count of criminal mischief, but the plea is revocable if she successfully completes a 36-month probationary period. A deputy district attorney testified that, if respondent violates the terms of her probation, a judgment of conviction will result automatically, but if she complies with the conditions, "the case will 'evaporate' as if it had never been filed."

652

The parents of 12 students at respondent's school expressed concern about respondent returning to teach there. Some staff members at the school also objected to respondent's return. District administrators initially decided that respondent would be reassigned to another school. The district then conducted an additional investigation to determine what knowledge district staff had concerning the incident and whether respondent had previously demonstrated anger control problems in a school setting. The district sent a letter to respondent containing factual allegations about the incident and scheduled a meeting with her to discuss the allegations.[1]

At some point after that meeting was held, the district decided to recommend respondent's outright dismissal and issued a notice to that effect. The district then arranged for an "informal" evidentiary hearing before a hearing officer. At the hearing, a psychologist who had evaluated respondent testified that her behavior on the day of the incident was an isolated event, not part of a pattern of behavior, and not likely to recur. He also testified that the behavior endangered respondent and would have endangered other persons had they been nearby. In addition, respondent's treating psychiatrist opined that respondent was "emotionally and mentally fit to return to classroom teaching duties." District personnel testified that, within the previous several years, two district teachers had attempted suicide but eventually had returned to classroom teaching after independent medical examinations indicated that each safely could do so. Neither of those suicide attempts, however, had resulted in publicity nor any danger to others. Eleven parents also testified at the hearing. Seven of the parents opposed respondent's return to teaching at her former school, and four supported her return.

Following oral argument, the district's board voted to dismiss respondent from employment on the grounds of neglect of duty and immorality. Respondent appealed that

---

[1] Thereafter, the Teachers Standards and Practices Commission (TSPC) sent notice to the district that it had opened a file regarding respondent and that there was "sufficient evidence to warrant a hearing in the matter." However, as of the date of the FDAB hearing, TSPC had taken no further action, and TSPC's limited action appears to have played no role in this case.

decision to FDAB. After a hearing, FDAB found that respondent's job performance had been good and that the district had failed to show that respondent's conduct in her personal life had compromised her effectiveness as a teacher. However, FDAB also found that respondent had breached duties to maintain effective relations with parents, the community, other teachers and staff, and to serve as a role model for students. FDAB also found that respondent's suicide attempt had risked harm to others and that the facts it found "are adequate to justify the legal grounds of neglect of duty and immorality under [ORS 342.865(1)(b) and (d)]." However, FDAB reversed the district's decision to terminate respondent and ordered her reinstatement, with back pay, on the ground that dismissal "was 'unreasonable' and 'clearly an excessive remedy.' "[2] In reaching that conclusion, FDAB relied in part on its findings regarding the return to teaching duties of other teachers who had attempted suicide. The district then petitioned for judicial review of FDAB's order and, pursuant to ORS 183.482(3), asked FDAB to stay enforcement of the order pending judicial review.

ORS 183.482(3) provides:

"(a)  The filing of the petition shall not stay enforcement of the agency order, but the agency may do so upon a showing of:

"(A)  Irreparable injury to the petitioner; and

"(B)  A colorable claim of error in the order.

---

[2] ORS 342.905(6) provides, in part:

"The [FDAB] panel shall determine whether the facts relied upon to support the statutory grounds cited for dismissal or nonextension are true and substantiated. If the panel finds these facts true and substantiated, it shall then consider whether such facts, in light of all the circumstances and additional facts developed at the hearing that are relevant to the statutory standards in ORS 342.865(1), are adequate to justify the statutory grounds cited. In making such determination, the panel shall consider all reasonable written rules, policies and standards of performance adopted by the school district board unless it finds that such rules, policies and standards have been so inconsistently applied as to amount to arbitrariness. *The panel shall not reverse the dismissal or nonextension if it finds the facts relied upon are true and substantiated unless it determines, in light of all the evidence and for reasons stated with specificity in its findings and order, that the dismissal or nonextension was unreasonable, arbitrary or clearly an excessive remedy.*"

(Emphasis added.)

"(b)   When a petitioner makes the showing required by paragraph (a) of this section, the agency shall grant the stay unless the agency determines that substantial public harm will result if the order is stayed. If the agency denies the stay, the denial shall be in writing and shall specifically state the substantial public harm that would result from the granting of the stay.

"(c)   When the agency grants a stay it may impose such reasonable conditions as the giving of a bond, irrevocable letter of credit or other undertaking and that the petitioner file all documents necessary to bring the matter to issue before the Court of Appeals within specified reasonable periods of time.

"(d)   Agency denial of a motion for stay is subject to review by the Court of Appeals under such rules as the court may establish."

With respect to the colorable claim of error requirement, the district argued in its motion for stay that FDAB erred as a matter of law in determining that the district's decision was unreasonable. The district urged that there were significant factual differences between respondent's conduct and the attempted suicides of other teachers who had been permitted to return to teaching duties, in particular that respondent's conduct had involved a risk of harm to others and had resulted in adverse publicity.

With respect to the irreparable injury requirement, the district argued that it had no available positions for which respondent is licensed and qualified that do not involve teaching duties; therefore, reinstating respondent would require it either to create a position that does not now exist, to lay off a teacher now assigned to a position for which respondent is licensed and qualified, or to pay respondent while she performs no employment duties at all. The district also asserted that reinstating respondent would cause irreparable injury in the form of adverse publicity, and protests by parents, and might even result in the withdrawal of students from respondent's classes. The district also contended that paying respondent back pay would result in irreparable injury because there is no assurance that it could obtain restitution of those funds from respondent if it prevails on judicial review.

On August 19, 2002, FDAB denied the district's motion for stay. FDAB characterized the district's "colorable claim of error" arguments as merely "[a]dopting a different perspective on the evidence." FDAB acknowledged that "there is some question of how to apply the deference" that it is required to give to a school district's dismissal decision. However, FDAB determined that the district had not demonstrated a colorable claim of error because the district had not shown that FDAB ignored precedent, failed to address the relevant statutory criteria, or failed to support its decision with findings. In addition, FDAB noted that the district's motion had addressed only the alleged "unreasonableness" of FDAB's decision and had not addressed the alternative ground that dismissal was "clearly an excessive remedy."[3]

Pursuant to ORS 183.482(3)(d), the district sought this court's review of FDAB's order denying a stay. In support of that request, the district renews the arguments that it made to FDAB. We begin our analysis by addressing several procedural issues raised by respondent.

■      Respondent first argues that the district's motion is untimely. Respondent notes that FDAB's order reversing her dismissal was issued on May 22, 2002. On July 22, the district's attorney signed the district's petition for judicial review, which this court received on July 25. On July 22, the district also filed its motion to stay before FDAB. On August 19, FDAB denied the motion to stay. On September 10, the district filed its motion in this court for review of FDAB's order denying a stay.

Respondent concedes that ORS 183.482(3) imposes no time limit for seeking review of an agency's disposition of a motion to stay enforcement of an order pending judicial review. Respondent also concedes that ORAP 4.30 does not prescribe a time limit for seeking such review.[4] Respondent

---

[3] FDAB reasoned that, because "a clearly excessive remedy" is an independent ground for reinstatement, the district's failure to challenge that ground means that the district's motion for stay necessarily failed. Although the district used only the word "unreasonable" in its motion, the district's discussion of that issue fairly addresses the grounds on which the FDAB relied to determine that the sanction was both "unreasonable" and "a clearly excessive remedy." Accordingly, we decline to uphold the FDAB's denial of the district's motion for stay on that ground.

[4] ORAP 4.30 provides:

nonetheless argues that we should apply the time limit prescribed in ORS 19.360(1), either because that statute governs judicial review proceedings or, alternatively, under the equitable doctrine of laches.

ORS 19.360(1) provides that a party seeking review by this court of a circuit court decision disposing of a motion for stay must do so within 14 days of the circuit court's order. On its face, that statute applies only to appeals from circuit court decisions under ORS chapter 19. By contrast, ORS 183.482(3) governs agency decisions regarding stays pending judicial review of administrative orders and this court's review of such decisions. No provision in ORS chapter 19 or ORS chapter 183 suggests that the legislature intended for ORS 19.360(1) to apply to judicial review proceedings under ORS chapter 183.

Moreover, assuming for the sake of argument that the doctrine of laches applies to a request for a stay under ORS 183.482(3), we would decline to apply the time limit prescribed by the legislature for appeals from circuit court decisions to the statutory scheme for judicial review of agency decisions. *See Menard and Menard,* 180 Or App 181,185, 42 P3d 359 (2002) (holding that, "[a]lthough what a 'reasonable time' is for purposes of laches depends on the circumstances of each case as opposed to some mechanical formula * * * Oregon courts take guidance from analogous statutes of limitations"). ORS 19.360(1) appears to balance the parties' competing interests by imposing a 14-day time limit for seeking review of a circuit court's stay, while also providing that the judgment being appealed is not enforceable during that 14-day period. By contrast, ORS 183.482(3) neither prescribes a time limit for seeking a stay nor a period during which the underlying agency decision is nonenforceable while the issue of whether a stay should be granted is determined. Given those differences, we reject respondent's laches

---

"A party may move for review of an agency's denial of a motion to stay. The motion shall include all documents that the party believes to have been considered by the agency on the party's request for a stay from the agency, the agency's written decision, if any, and any other documents the party considers relevant. The court may lengthen or shorten the period of time in which the agency may respond to the motion, as provided in Rule 7.05(3)."

argument, and we conclude that the district's motion for review of FDAB's denial of a stay is timely.

Respondent next contends that the district's motion ignores this court's limited standard of review of FDAB's order denying a stay. Respondent relies on *Springfield Education Assn. v. School Dist.*, 290 Or 217, 621 P2d 547 (1980), in support of her argument that our review is limited to determining whether FDAB's interpretation or application of law is "consistent with or tends to advance a more generally expressed legislative policy" and that we should defer to FDAB's expertise in interpreting the law applicable to teacher dismissals. Accordingly, respondent argues, we should defer to FDAB's determination that the district has failed to show a colorable claim of error or irreparable injury if a stay is not granted.

In *Springfield Education Assn.*, the Supreme Court held that statutory terms in legislation governing administrative agency decisions can be described in three categories and that the degree of judicial deference to an agency's interpretation of statutory terms varies accordingly:

> "[*Springfield Education Assn.*] divides statutory terms into three classes, each of which conveys to the agency a different range of responsibility for definition. The first class, terms of precise meaning, are those of common or technical parlance requiring little more than application to the facts of the case. The second class includes inexact terms which comprise a complete expression of legislative policy. The agency's function is one of interpretation within the meaning intended by the legislature. The third class, terms of 'delegation,' are forms of incomplete legislation which the agency is given authority to complete. The agency functions as more than mere interpreter; it may make rules within the range of discretion established by the statutory terms."

*Ross v. Springfield School Dist. No. 19*, 294 Or 357, 367 n 7, 657 P2d 188 (1982). The disputed statutory terms in *Springfield Education Assn.* were unique to the agency involved in that case. By contrast, the statutory terms at issue here, "a colorable claim of error" and "irreparable injury," are applicable to all administrative agencies whose decisions are subject to judicial review by this court under ORS 183.482. Neither the words of the statute nor its context

suggest that the legislature intended those standards to have different meanings depending on the identity of the agency whose decision is under review. As the court noted in *Springfield Education Assn.*, terms of precise meaning can be "of common or technical parlance." *Id.* at 223. To the extent that the terms "a colorable claim of error" and "irreparable injury" fit the analytical choices prescribed by *Springfield Education Assn.*, they are terms of relatively precise meaning and are not terms subject to interpretation by the agency whose decision is the subject of a motion for stay.

Although we review FDAB's findings of fact for substantial evidence, ORS 183.482(8)(c),[5] we do not understand ORS 183.482(3)(a) and (b) to confer any discretion on the agency, that is, the petitioner on judicial review either has shown a colorable claim of error or not and has shown irreparable injury or not. Because the meaning of "colorable claim of error" and "irreparable injury" and their application to the facts of the case are issues of law, we review the agency's determination of those issues for errors of law. *See* ORS 183.482(8)(a).

We turn to the merits of the district's motion. Although we have not had occasion to construe the phrase "a colorable claim of error" in the context of ORS 183.482(3), we

---

[5] ORS 183.482 provides, in part:

"(8)(a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b) The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A) Outside the range of discretion delegated to the agency by law;

"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C) Otherwise in violation of a constitutional or statutory provision.

"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

have considered the meaning of the key word "colorable" in the context of a different statute, ORS 419A.200(5).[6] That meaning is equally applicable here:

> "The legislature has not defined the phrase 'colorable claim of error' in ORS 419A.200(4)(a) [1999] or any of the other three statutes in which the phrase is used. The key word in the phrase is 'colorable,' the dictionary definition for which is 'seemingly valid and genuine: having an appearance of truth, right, or justice: plausible.' *Webster's Third New Int'l Dictionary*, 449 (unabridged ed 1993).
>
> "Part of the context of the legislature's use of the phrase 'colorable claim of error' is case law in existence when the legislature adopted the phrase. The legislature first used that phrase in ORS 183.482(3), relating to stays of agency orders in contested cases pending judicial review, and it appears to be a statutory codification of this court's decision in *Von Weidlein/N.W. Bottling v. OLCC*, 16 Or App 81, 515 P2d 936 (1973). In that case, the court characterized 'colorable claims' as contentions that 'appear to be substantial' or 'non-frivolous.' *Id.* at 89. As is evident from the court's decisions in *Von Weidlein/N.W. Bottling*, and another case, *Evans v. OSP*, 87 Or App 514, 525-26, 743 P2d 168 (1987), a prison disciplinary order case, a 'colorable claim of error' is something less than a showing that the petitioner is reasonably likely to prevail on appeal. Combining the dictionary definition of 'colorable' with the characterization of 'colorable claims' in *Von Weidlein/N.W. Bottling*, it appears that the legislature may have intended 'colorable claim of error' to mean seemingly valid, genuine, or plausible claims of error or substantial and nonfrivolous claims of error."

*State ex rel Juv. Dept. v. Balderas*, 172 Or App 223, 229-30, 18 P3d 434 (2001) (footnote omitted).

---

[6] ORS 419A.200 provides, in part:

"(5)(a) Upon motion of a person, other than the state, entitled to appeal under subsection (1) of this section, the appellate court shall grant the person leave to file a notice of appeal after the time limits described in subsection (3) of this section if:

"(A) The person shows a colorable claim of error in the proceeding from which the appeal is taken; and

"(B) The person shows that the failure to file a timely notice of appeal is not personally attributable to the person."

■ Likewise, a "colorable" claim of error, as used in ORS 183.482(3), logically means a claim of error that is substantial and nonfrivolous, or seemingly valid, genuine, or plausible. Of course, the assessment of whether a claim of error is colorable depends on the nature of the asserted error. Depending on the issue under review, a party seeking to stay enforcement of an agency order under ORS 183.482(3) must show that it is entitled to have the agency order set aside, modified, reversed, or remanded on the ground that the agency committed an error of law, abused its discretion, or found facts not supported by substantial evidence. ORS 183.482(8).

■ In sum, to satisfy ORS 183.482(3)(a)(B), a party moving for a stay must (1) assert that it is entitled to have the agency order set aside, modified, reversed, or remanded on one or more of the grounds specified in ORS 183.482(8), and (2) show that the assertion is substantial and nonfrivolous, or seemingly valid, genuine, or plausible, under the circumstances of the case.

In addition, the moving party must make a showing of irreparable injury. ORS 183.482(3)(a)(A). We recently addressed the quantum of proof necessary to make such a showing in *Arlington Sch. Dist. No. 3 v. Arlington Ed. Assoc.*, 184 Or App 97, 55 P3d 546 (2002). There, we held that "a 'showing' must at least demonstrate that irreparable injury *probably* would result if a stay is denied," *id.* at 102 (emphasis in original), and that an injury is irreparable if the party cannot receive reasonable or complete redress in a court of law, *id.* at 101-02.

In this case, the district posits two claims of error. First, it argues that FDAB erred as a matter of law in determining that respondent's dismissal was "unreasonable" and "clearly an excessive remedy" in light of FDAB's finding that the district had proven "immorality," a statutory predicate for dismissal, and that the agency had erroneously substituted its judgment for the district's judgment in determining the proper sanction. The district relies on *Lincoln County School Dist. v. Mayer*, 39 Or App 99, 591 P2d 755, *rev den*, 287 Or 215 (1979), where we held that, after FDAB had found sufficient facts to justify a statutory basis for dismissal, it

could not reverse a district's decision to dismiss a teacher unless it could say that "no reasonable school board" would have imposed that sanction. *Id.* at 106-07.

Second, the district asserts that FDAB erred in failing to remand the case to the district's board after determining that the district had failed to substantiate all of the facts on which it based its decision to dismiss respondent. In support of that claim of error, the district relies on *Thomas v. Cascade Union High Sch. Dist. No. 5*, 80 Or App 736, 724 P2d 330 (1986), where we held that FDAB erred in failing to remand the case to the school district after it found that many of the facts and some of the grounds on which the district relied to dismiss a teacher had not been substantiated.

In this case, FDAB denied relief in part because the district did not contend that substantial evidence was lacking to support any of FDAB's factual findings, and the district did not cite any authority suggesting that FDAB incorrectly construed any of the relevant statutes. FDAB also noted that its order showed that it had considered all of the statutorily prescribed factors and that the order stated with specificity its reasons for concluding that dismissal was an "unreasonable" and "clearly excessive remedy." From those observations, FDAB reasoned that the district's claims amounted to no more than a "different perspective" of the case and did not constitute colorable claims of error. We disagree with that characterization.

■■ If disposition of a case turns on FDAB's interpretation or application of a statute, and a petitioner on judicial review plausibly argues that the agency misinterpreted the statute or misapplied it under the circumstances of the case, then the argument constitutes a colorable claim of error. It is true that the outcome of this case may turn on whether the FDAB properly interpreted and applied the applicable statutory authority in determining that the sanction of dismissal was "unreasonable" or "clearly an excessive remedy." In the parlance of *Springfield Education Assn.*, those terms appear to be delegative, or at the least inexact, terms. It may be that ultimately we will be persuaded that FDAB correctly interpreted and applied them "because of its experience in the application of the statute to varying facts" or because of its

"reasoning demonstrating the tendency * * * to advance the policy embodied in the words of the statute." *Springfield Education Assn.*, 290 Or at 228. However, that observation does not compel us to defer to FDAB's conclusion that the district has failed to demonstrate a colorable claim of error. As noted, the assertion of a petitioner on review that the administrative agency committed error is addressed to this court under the standards prescribed in ORS 183.482(8), a statutory provision that constrains *this court* and not the agency. An administrative agency enjoys no special expertise in determining what a reviewing court will consider to be a colorable claim of error. It follows that FDAB's determination of whether or not the district has shown a colorable claim of error is not entitled to special deference from this court.

■ After briefing, oral argument, and a more complete review of the record, we may or may not determine that FDAB erred in any respect asserted by the district. However, at this stage of the proceeding, the district need only make a substantial and nonfrivolous, or seemingly valid, genuine, or plausible, argument, that FDAB has erroneously interpreted or applied a provision of law and that a correct interpretation will result in its order being set aside, modified, reversed, or remanded. We conclude that—at least as to its first claim of error—the district has done so and, therefore, has shown a colorable claim of error.[7]

---

[7] Whether the district's second claim of error is *independently* colorable is less clear. The district argues that FDAB, after finding some facts asserted by the district to be true and substantiated and finding others not to be true and substantiated, should have remanded the case to the district for a determination of whether the substantiated facts alone constituted "neglect of duty" and "immorality."

ORS 342.905(6) provides that

"[FDAB] shall not reverse the dismissal or nonextension if it finds the facts relied upon are true and substantiated *unless it determines, in light of all the evidence and for reasons stated with specificity in its findings and order, that the dismissal or nonextension was unreasonable, arbitrary or clearly an excessive remedy.*"

(Emphasis added.) Thus, even when FDAB agrees that all the facts relied upon by a school district are true and substantiated, it can reverse a dismissal if it finds that sanction to be "unreasonable, arbitrary or clearly an excessive remedy."

In *Thomas*, FDAB did not determine that the dismissal was unreasonable or clearly excessive. FDAB, therefore, was required to return the case to the school district for reevaluation of its decision. Here, however, FDAB *did* determine that dismissal was unreasonable and a clearly excessive remedy. If that determination was correct, FDAB was authorized to reverse the dismissal, even if it had

■     We turn to the question of whether the district has shown an "irreparable injury." The district argues that denial of a stay would cause it irreparable injury in a number of ways. First, it relies on ORS 342.905(7)(b), which provides that, pending judicial review of an FDAB order requiring reinstatement of a teacher, a school district may elect not to have the teacher perform teaching duties unless the court otherwise orders.[8] In an affidavit in support of the district's motion for stay, a district official avers that no nonclassroom positions are available in which there is no student contact.[9] The district asserts that the only nonclassroom positions that are available require administrative credentials or special education licensing that respondent does not possess. Accordingly, the district contends that, if it were to reinstate respondent to an administrative position, it would have to create a position for respondent, resulting in the district paying respondent for "nothing of value."

    Second, the district asserts that, even if it wanted to reinstate respondent to a teaching position, it had no positions available when FDAB issued its underlying order and the district filed its motion to stay. Although it concedes that respondent's seniority would permit her to "bump" another teacher if the district chose to reinstate her, the district argues that reinstating respondent when the FDAB order

---

determined that *all* of the facts relied upon by the district were true and substantiated. Thus, FDAB's failure to return the case to the district may not present an independently colorable claim of error.

   [8] ORS 342.905(7)(b) provides:

    "So long as the right of the district board under subsection (9) of this section and under ORS 183.480 and 183.500 to judicial review of the action of the Fair Dismissal Appeals Board remains unexpired, the district school board may withhold the reinstated teacher from performance of teaching duties, unless otherwise ordered by the court having jurisdiction of the appeal."

   [9] Respondent argues that the district does have such positions available and that, by virtue of her seniority, she could "bump" a current employee with less seniority. Respondent argues that requiring the district to lay off a current employee to accommodate reinstatement ordered by FDAB pending judicial review does not constitute irreparable harm to the district. We express no opinion regarding that assertion, because respondent's factual predicate fails. That is, the district's contention that no such position is available is supported by the affidavit of a district official with apparent knowledge of the relevant facts. Respondent's assertion is not supported by any evidence. If FDAB's order can be understood to make a finding against the district on this issue, substantial evidence in the record does not support it.

issued—in late May, near the end of the school year—would have been unduly disruptive to students, other teaching staff, and school administrators.

Third, the district argues that reinstating respondent to a teaching position would place her in the position of serving as a role model for students, which is inconsistent with the district's premise, which FDAB upheld, that respondent engaged in neglect of duty and immorality.

Fourth, the district contends that forcing it to reinstate respondent would irreparably impair its relationship with the community because of the adverse publicity surrounding respondent's conduct. The district maintains that, if respondent were reinstated in another school, the parents of children attending that school would conclude that respondent was transferred from an affluent school to another, less affluent school, because of the complaints of "activist parents."

Finally, the district asserts that it is in the midst of an extraordinary financial crisis. It argues that, as a public entity entrusted with statutory and fiduciary duties to responsibly expend public funds, it should not be required to pay benefits to a teacher who it believes is unfit to teach and who will not be performing any work for the district during the pendency of judicial review. Relatedly, the district argues that it has no assurance that, should this court ultimately uphold respondent's dismissal, it ever could recover the payments required by FDAB's order.

■ Some of the harms identified by the district, such as exposure of students to a negative role model and damage to the district's relationship with its students and parents, *could*—under some circumstances—be irreparable. However, ORS 183.482(3) requires a showing that, in the absence of a stay, irreparable injury is *probable. Arlington Sch. Dist. No. 3,* 184 Or App at 101-02. FDAB found that, shortly after respondent's conduct was publicized, some parents voiced concern about respondent's fitness to teach and that some parents testified "against" respondent at the school board hearing. However, such evidence falls short of showing that respondent's reinstatement during the pendency of judicial

review probably would provoke an irreparably harmful reaction by students, parents, other teachers, or the community.

Nor does the fact that the district may elect not to reinstate respondent to teaching duties—by itself—constitute irreparable harm, because that decision would be a product of the district's choice. True, the district is entitled not to reinstate respondent to a teaching position, and it has shown that there is no other existing position available for which respondent is licensed and qualified. However, it has not shown that the expense of "creating" such a position pending judicial review constitutes irreparable harm. The record does not show that it is probable that the district would be unable to enforce a judgment for restitution of payments made to respondent if FDAB's underlying order is reversed on review. Even though the district would be without the use of those funds during the pendency of review, there is no evidence that a judgment of restitution, together with prejudgment interest, would not adequately compensate the district for that loss.

The district has not shown that it would be irreparably injured if a stay is denied. Accordingly, FDAB did not err in denying the district's motion for stay.

Order denying stay affirmed.