123 P.3d 1142

**P & P MEHTA LLC d/b/a Melrose Gas & Food Mart, Heeten Mehta as Agent, Petitioner,**

v.

**The Honorable Michael D. JONES, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**Arizona Department of Liquor Licenses and Control and its Board; City of Phoenix, Real Parties in Interest.**

**No. 1 CA–SA 05–0183.**

Court of Appeals of Arizona, Division 1, Department C.

Nov. 17, 2005.

Schelstraete Law Office, By Peter H. Schelstraete, Tempe, Attorneys for Petitioner.

Gary Verburg, Phoenix City Attorney, By Glen S. Hammond, Assistant City Prosecutor, Phoenix, Attorneys for City of Phoenix.

Office of the Arizona Attorney General, By Blair C. Driggs, Christopher Munns, Phoenix, Attorneys for Arizona Department of Liquor Licenses and Control.

## OPINION

SULT, Judge.

¶ 1 Arizona Revised Statutes ("A.R.S.") § 12–911(A)(1) (2003) permits the superior court, while a judicial review proceeding is pending, to stay the implementation of a state administrative agency decision when it finds "good cause" to do so. What the legislature meant when it created this standard is the subject of this opinion.

¶ 2 We are asked by the City of Phoenix, intervenor in this liquor license proceeding, to adopt from the jurisprudence dealing with an original proceeding for a preliminary injunction a stringent test for stay relief that requires a substantial likelihood of success, harm to the petitioner that not only outweighs any harm accruing to other parties but is also irreparable, and some public policy rationale favoring a stay. Petitioner P & P Mehta suggests a less exacting approach which requires demonstrating only some substantive merit to the request for review and harm to the petitioner from immediate implementation of the agency decision that would be greater than any harm the agency or other parties would suffer if a stay were granted. Faced with these competing interpretations of the statutory standard, we choose that proposed by Petitioner, as we explain.

## BACKGROUND

¶ 3 Petitioner, the owner of a convenience store, sought the issuance of a permanent liquor license from the Department of Liquor Licenses and Control. Petitioner had recently purchased the store and had been selling liquor under an interim permit that was based on the prior owner's license. The City of Phoenix intervened and opposed the application, arguing that important neighborhood values were significantly diminished by the sale of liquor at Petitioner's establishment. The Department agreed, denying Petitioner a license and finding that he had failed to show that the best interests of the community would be served by its issuance. However, the Department did allow Petitioner to continue operating under the interim permit in order to initiate judicial review proceedings and seek a stay of the agency decision from the superior court.

¶ 4 Petitioner timely filed a complaint for judicial review and requested a stay of the Department's decision, essentially asking to continue operating under the permit until the review could be completed. The superior court denied the request, finding that although Petitioner would be irreparably harmed if the stay was not granted, Petitioner had failed to demonstrate a substantial likelihood of success on the merits. The court also commented that the public interest supporting the Department's decision was strong, but the court did not specifically describe this interest or explain why protecting it outweighed the harm to Petitioner.

¶ 5 Petitioner brought this special action seeking review of the superior court's denial of the stay request arguing, *inter alia*, that the superior court had applied too stringent a standard in assessing the request. We granted an interlocutory stay of proceedings, preserving Petitioner's right to continue operating under the interim permit pending our resolution of the dispositive question; namely, what is the meaning of "good cause" in § 12–911(A)(1).

## ANALYSIS

¶ 6 Judicial review of a state administrative agency's decision is governed by

A.R.S. §§ 12–901 to –914 (2003). Section 12–911(A)(1) deals specifically with the superior court's power to stay the agency decision pending completion of its review. This provision permits the court

> [w]ith or without bond, unless required by the statute under authority of which the administrative decision was entered, and before or after answer, [to] stay the decision in whole or in part pending final disposition of the case, after notice to the agency and *for good cause shown* ....

A.R.S. § 12–911(A)(1) (emphasis added). This statute is supplemented by Rule 3(a) of the Rules of Procedure for Judicial Review of Administrative Decisions which provides that "[a] motion for stay of an administrative decision shall not be granted without good cause and without reasonable notice to all parties." Rule 3(b) adds that the court may condition the stay "upon the filing of a bond ... or upon such other conditions as the court directs."

¶ 7 The superior court in this case did not rely on these authorities when it denied Petitioner's stay request. Rather, citing *Shoen v. Shoen*, 167 Ariz. 58, 804 P.2d 787 (App. 1990), the court applied the criteria normally employed to evaluate an application for a preliminary injunction in an original proceeding. In *Shoen*, dissident corporate shareholders brought an action in superior court against other shareholders and as part of the action sought a preliminary injunction to cancel the issuance of certain stock to the others. *Id.* In discussing the basis upon which such relief could be granted, the *Shoen* court delineated the "four traditional equitable criteria" that an applicant for a preliminary injunction must satisfy:

1) A strong likelihood that he will succeed at trial on the merits;

2) The possibility of irreparable injury to him not remediable by damages if the requested relief is not granted;

3) A balance of hardships favors himself; and

4) Public policy favors the injunction.

*Id.* at 63, 804 P.2d at 792.

¶ 8 We would not reverse the superior court for applying these criteria rather than § 12–911(A)(1) if we could conclude, as the City suggests, that the legislature intended the statute's "good cause" standard to mirror *Shoen's* "traditional equitable criteria." Petitioner, however, challenges this interpretation arguing that there is no basis to suppose the legislature intended such a strict standard. To resolve this dispute, we begin by examining whether the process of applying for a preliminary injunction is so similar to the process of seeking a stay of an administrative agency decision that employing the same evaluative criteria for both is a reasonable construction of legislative intent.

¶ 9 Considering the first *Shoen* criterion, a "strong likelihood of success," we acknowledge the appropriateness of requiring an applicant for a preliminary injunction to make such a showing when he first seeks to enjoin personal or property rights of another. A court should not wield its injunctive power to disrupt the settled rights of others without first requiring from the applicant significant evidence that he is on legally solid ground. For purposes of our analysis, the point is that because the applicant has not been subject to a prior determination on the merits of his claim, it is entirely possible that he will be able to make the requisite showing.

¶ 10 Compare this scenario to the petitioner seeking to stay an agency decision. This petitioner has just lost on the merits at the administrative level. To nonetheless require him to demonstrate at the inception of the review process a significant probability of success asks the near-impossible. Except in the most egregious instances of agency error, this effort will fail.

¶ 11 If we read § 12–911(A)(1) to nevertheless require such a showing, we effectively place the availability of stay orders out of reach in most instances. This would be equivalent to holding that the legislature created an essentially illusory remedy, and would simply not be a plausible construction of legislative intent. A standard interpretive directive to courts is to construe statutes to reach sensible results. *Lake Havasu City v. Mohave County*, 138 Ariz. 552, 557, 675 P.2d 1371, 1376 (App.1983). In the context of § 12–911(A)(1) "good cause," a requirement that a petitioner must show a "strong likeli-

hood of success" is not a sensible result. We therefore decline to incorporate this requirement into the statute.

¶ 12 When we reject the first *Shoen* criterion, we do not suggest that the merits of a petitioner's claim of agency error are irrelevant. The legislature did not intend to confer an unconditional right to a stay or it would have said so. By conditioning a stay upon a showing of "good cause," the legislature intended that some degree of merit be demonstrated before the court would interfere with the implementation of the agency decision. What degree of merit should be required is dealt with later in this opinion.

¶ 13 We next consider the harm criterion. To require, as *Shoen* does, that asserted harm must qualify as "irreparable" before it can be weighed against other claims of harm seems an appropriate burden in the injunction context for the same reason as "strong likelihood of success;" that is, a court employing its injunctive power to disrupt settled rights of others should do so only for the most deserving of applicants. In the context of a request for a stay of an agency decision, however, such a burden seems unnecessary. Certainly, some degree of harm should be required in order to justify a stay, and presumably no stay would be sought in the absence of harm. But we see no compelling reason why the harm asserted should have to qualify as "irreparable" even before it can be measured against the claims of harm made by other parties.

¶ 14 In almost every review situation there will be competing harms alleged. The petitioner will assert harm to his interests, the agency will assert harm to the public interest implicated in its area of regulatory concern, and other participating parties, as here, will argue that a stay would adversely impact their interests. The overriding concern for the court should be to determine in whose favor the balance tips; that is, who stands to suffer the most from an adverse decision. That a petitioner may be able to demonstrate "irreparable" harm will strengthen his position, but this should not be required before he is permitted onto the scale. If the court determines that his harm outweighs any harm to the interests of other parties, this should suffice.

¶ 15 This critique of just the first two *Shoen* criteria is enough to demonstrate that *Shoen's* test for obtaining a preliminary injunction does not provide an appropriate template by which to judge whether a stay of an administrative agency's decision should be granted.[1] In saying this, we acknowledge that other jurisdictions do apply a more stringent test to a request for a stay of an agency decision. This is true, for example, in the federal system where the courts apply a four-part test quite similar to the *Shoen* test that was first enunciated in *Virginia Petroleum Jobbers Association v. Federal Power Commission*, 259 F.2d 921 (D.C.Cir.1958). The federal test inquires "(1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal ... (2) Has the petitioner shown that without such relief, it will be irreparably injured ... (3) Would the issuance of a stay substantially harm other parties interested in the proceedings ... (4) Where lies the public interest?" 259 F.2d at 925. Some state courts have adopted this test wholly or partially when construing their administrative procedure acts, although none of these statutes to our knowledge has the "good cause" language of § 12–911(A)(1). See *Public Employment Relations Board v. Stohr*, 279 N.W.2d 286, 291 (Iowa 1979), and cases cited therein.

¶ 16 Other state courts have specifically rejected the federal test as not reflective of local legislative intent. See, e.g., *Brackman v. Board of Nursing*, 250 Mont. 368, 820 P.2d 1314, 1316 (1991). Still others have determined, without reference to federal prece-

---

1. Regarding the third *Shoen* criterion, balancing the harms, our analysis indicates that such a process should be part of a "good cause" proceeding. As for the fourth criterion, that a requested injunction should comport with public policy, such a concern does not seem to have any independent applicability in the context of judicial review of agency decisions. Judicial review petitions are numerous and routine and are not likely as a rule to implicate any significant public policy concerns, other than the public interest inherent in the area of regulatory responsibility assigned to the affected agency. This interest, of course, is taken into account in the balancing of harms process.

dent, that a stay of an agency decision simply does not equate to a preliminary injunction. *See, e.g., State v. Trueblood,* 767 N.E.2d 1011, 1013–14 (Ind.App.2002). Illinois has specifically declined to engraft onto its statutory stay provision those prerequisites traditionally applied to obtaining a preliminary injunction. *Marsh v. Illinois Racing Board,* 179 Ill.2d 488, 228 Ill.Dec. 692, 689 N.E.2d 1113 (1997). Significantly, the Illinois statute has the same "good cause" standard as Arizona, *id.* at 1116 (citing 735 ILL. COMP. STAT. 5/3–111(a)(1)(West 1994)), which the *Marsh* court described as " 'intended to give the court broad judicial discretion to grant or deny a stay of an administrative decision without applying traditional standards applicable for the issuance of injunctions,' " *id.* at 1117 (quoting *Ardt v. Illinois Department of Professional Regulation,* 154 Ill.2d 138, 180 Ill. Dec. 713, 607 N.E.2d 1226, 1230 (1992)).

¶ 17 Arizona's attitude toward the federal test can be gleaned from an historical review of legislative activity in connection with Arizona's administrative procedure provisions.[2] On two prior occasions, Arizona adopted portions of the Model State Administrative Procedure Act, a model act promulgated in 1961 and again in 1981 by the National Conference of Commissioners on Uniform State Laws. *See* 1970 Ariz. Sess. Laws, ch. 101 (the 1961 Act) & 1986 Ariz. Sess. Laws, ch. 232 (the 1981 Act). Both model acts contained a provision authorizing a stay pending judicial review of agency action, but neither used a "good cause" standard. The 1961 version authorized a court to order a stay simply "upon appropriate terms." MODEL STATE ADMINISTRATIVE PROCEDURE ACT § 15 (1961). The 1981 version, however, considerably restricted the court's discretion, permitting a stay only upon a petitioner's satisfying a four-part test derived from the federal test of *Virginia Petroleum Jobbers.* MODEL STATE ADMINISTRATIVE PROCEDURE ACT § 5–111 cmt. (1981).

¶ 18 It is significant that in 1986 our legislature did not adopt the 1981 Model Act's restrictive stay provision patterned on the federal test. Rather, both in 1970 and 1986 the legislature elected to retain the "good cause" standard for obtaining a stay that it had first enacted in 1954 when it added the judicial review provisions that still exist today as §§ 12–901 through –914. *See* 1954 Ariz. Sess. Laws, ch. 97. And with one exception not material here, § 12–911(A)(1) has remained essentially unchanged since 1954. In our opinion, by declining in 1986 to replace the "good cause" standard with the federal approach suggested by the Model Act, the legislature provided a clear indication that it did not intend that the superior court's discretion to consider stay requests should be as circumscribed as that of the federal court.

¶ 19 Summarizing our analysis, we decline to attribute to our legislature an intention to incorporate the "strong likelihood of success/irreparable harm" test into the meaning of "good cause" and thereby effectively render illusory the stay remedy it created. Rather, we believe that the legislature's historical treatment of Arizona's administrative procedure act demonstrates that the legislature intended "good cause" to involve a less exacting standard. We therefore conclude that the superior court erred when it applied *Shoen* to Petitioner's stay request. Accordingly, we must remand to permit the court to again judge the request pursuant to the proper standard, which brings us to the primary purpose of this opinion: what constitutes "good cause" under § 12–911(A)(1)?

¶ 20 We begin with the substantive merit that a petitioner must demonstrate to justify his request. Clearly, the threshold cannot be set so high as to create the almost insurmountable hurdle of the *Shoen* "strong likelihood" test. By the same token, it cannot be so low that it effectively eviscerates the "good cause" requirement. *See Moore v. Mankowitz,* 127 Ill.App.3d 1050, 83 Ill.Dec. 199, 469 N.E.2d 1133 (1984) ("Without some limitation on the right to a stay, the requirement of good cause would allow any administrative action to be suspended even though

---

**2.** The legislature has assigned the provisions of Arizona's administrative procedure act to separate titles of the revised statutes. The bulk of the provisions are found in title 41 (A.R.S. §§ 41– 1001 through 41–1092.12 (2004 & Supp.2005)). The judicial review provisions, however, are found in title 12 (A.R.S. §§ 12–901 through 12– 914 (2003)).

the plaintiff had no possibility of ultimately prevailing on the merits.").

¶ 21 Oregon, a state that does not follow the federal model, has formulated a test for substantive merit that adopts the middle ground between the federal test and no test at all. The Oregon legislature has established "[a] colorable claim of error" as one of two requirements for obtaining a stay. Oregon Revised Statutes § 183.482(3) (2003). In construing this phrase the Oregon Court of Appeals first explained that it does not mean "a showing that the petitioner is reasonably likely to prevail on appeal." *Bergerson v. Salem–Keizer School District,* 185 Or.App. 649, 60 P.3d 1126, 1132 (2003) (quoting *State ex rel. Juvenile Department v. Balderas,* 172 Or.App. 223, 18 P.3d 434, 437 (Or.2001)). Rather, it requires "something less." *Bergerson,* 60 P.3d at 1132. As defined by the *Bergerson* court, a "colorable claim" is an assertion that "is seemingly valid, genuine, or plausible, under the circumstances of the case." *Id.*

¶ 22 We think the Oregon concept of "colorable claim" accurately reflects what our legislature wished to accomplish when it established the "good cause" framework of § 12–911(A)(1). As a testing mechanism, we believe that "colorable claim" will assist both the superior court and practitioners in identifying those petitions with sufficient merit to warrant consideration for a stay. We therefore hold that a petitioner seeking a stay of an agency decision must demonstrate, as regards substantive merit, that his petition presents a seemingly valid, genuine, or plausible claim under the circumstances of the case; that is, that he has a "colorable claim."

¶ 23 Turning again to harm, as earlier discussed, "good cause" must include a component of harm to the petitioner. Attributing a degree to the harm, such as "irreparable," is not required, but it is not enough for the petitioner simply to demonstrate some harm. Instead, the petitioner's harm must be weighed against the harm that would accrue to the agency or other parties to the proceedings. Only if the court concludes that the balance of harm tips in favor of the petitioner has he shown the "harm" necessary to constitute "good cause."

¶ 24 A further note regarding this balancing of harms process: the court should not overlook the tools at its disposal to mitigate potential harm to the agency's interest or that of another party. Rule 3(b) permits the court to set appropriate conditions upon a stay request and, if monetary or performance considerations are involved, require a security or performance bond of the petitioner. Employing these mitigating tools may allay the harm to others sufficiently to permit the court to find that the balance of harm favors a petitioner.

## CONCLUSION

¶ 25 Petitioner has presented a question of law that is of first impression and statewide importance. Accordingly, we exercise our discretion to accept jurisdiction of the petition and rule on the merits. *See Fairness and Accountability in Insurance Reform v. Greene,* 180 Ariz. 582, 586, 886 P.2d 1338, 1342 (1994). Because the trial court erred in the standard it applied to Petitioner's request for stay, we grant relief to the extent of remanding this matter to the trial court to consider whether Petitioner has shown "good cause" to stay the implementation of the Department's decision. In this context, "good cause" means that Petitioner has shown a colorable claim and that the balance of harm favors granting the stay. Petitioner shall be permitted to operate under the interim permit until the superior court has considered and ruled upon the request for stay.

CONCURRING: DONN KESSLER, Presiding Judge and JEFFERSON L. LANKFORD, Judge.